IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MELVIN BLALOCK,<br>    Plaintiff,<br><br>            v.<br><br>CITY OF COLLEGE PARK; C.D. MORRIS; A.M. SCHMITZ; T.T. REID; C.T. WASHINGTON; C.T. JACKSON; and S.M. DUNN,<br>    Defendants. | Civil Action No.<br>1:18-cv-01109-SDG |

**OPINION AND ORDER**

This matter is before the Court on the motions to dismiss by Defendant C.T. Jackson [ECF 61] and C.D. Morris [ECF 62]; the motion for summary judgment by Defendants City of College Park (College Park), S.M. Dunn, T.T. Reid, A.M. Schmitz, and C.T. Washington [ECF 63];[1] and all Defendants' motion to file under seal [ECF 65]. Having reviewed the parties' briefing, and with the benefit of oral argument, the Court **GRANTS** Defendants' motions.

**I.    Background**

The Court largely relies on Defendants' version of the facts here, even though evidence must be viewed in the light most favorable to the party opposing summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Herzog*

---

[1]   Jackson and Morris join in the summary judgment motion to the extent the Court does not grant their motions to dismiss. ECF 63, at 1.

*v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999). This is because Plaintiff failed to contest Defendants' Statement of Material Facts (SMF).

Defendants College Park, Dunn, Reid, Schmitz, and Washington submitted the SMF in support of the summary judgment motion.[2] Plaintiff did not respond. This violated the Court's local rules. LR 56.1(B)(2)(a)(2), NDGa; *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) ("[A party's] failure to comply with local rule 56.1 is not a mere technicality. The rule is designed to help the court identify and organize the issues in the case."). By way of explanation during oral argument, Plaintiff's counsel stated that he had no basis to challenge anything in the SMF. In light of Plaintiff's concessions and based on its own review of the record, the Court deems each of the facts in the SMF admitted and concludes that the following facts are properly supported by the evidence unless otherwise noted.

### A.   Factual allegations

On March 16, 2016, Melvin Blalock was getting an oil change at a gas station on the corner of Godby Road and Old National Highway, in College Park, Georgia, when he began to feel his blood sugar drop.[3] So, he walked across the street to a

---

[2]   ECF 63-2.

[3]   *Id.* ¶¶ 1, 5.

convenience store to get a snack.[4] Around the same time, Defendants Dunn, Jackson, Morris, Reid, Schmitz, and Washington—all officers with the College Park Police—responded to an unrelated incident on Old National Highway.[5] Morris reported that he observed what appeared to be a "hand-to-hand drug transaction" at the bus stop in front of the gas station.[6] Officers arrested the man and woman who were allegedly involved in the drug transaction, although the man led police on a short foot chase before he was finally restrained.[7] Blalock observed the arrest, and wondered what was going on.[8] Although there is purportedly video of at least a portion of this incident,[9] counsel for Plaintiff and for Defendants both acknowledged during oral argument that it is not part of the record. Accordingly, the Court does not rely on any discussion of the contents of the video.

The police officers asked Blalock multiple times to step back or leave the area because he was "interfering with their investigation, and also out of concern

---

[4]   *Id.* ¶ 5.

[5]   ECF 63-2, ¶ 6.

[6]   *Id.* ¶¶ 7, 9.

[7]   *Id.* ¶¶ 10–11.

[8]   *Id.* ¶¶ 12–13.

[9]   ECF 66, at 2.

for his safety."[10] Because Blalock did not comply with the officers' demands, he was handcuffed.[11] When Sergeant Washington arrived at the scene, he had Blalock's handcuffs removed.[12] Blalock was handcuffed for 10-to-15 minutes.[13]

At some point, Blalock began to complain about his blood pressure and an ambulance was summoned.[14] College Park Fire and Rescue arrived to assess him.[15] Ultimately, Blalock was transported by EMS via ambulance to Atlanta Medical Center.[16] EMS records indicate that Blalock had "no trauma, no chest pain, unremarkable neck/back . . . no obvious bruising, swelling, or bleeding noted."[17] On arriving at the medical facility, Blalock's chief complaints were high blood pressure and back pain.[18]

---

[10]  ECF 63-2, ¶ 14.

[11]  *Id.* ¶ 19.

[12]  *Id.* ¶ 23. There is an error in numbering in the SMF which omits paragraph 22.

[13]  *Id.* ¶ 24.

[14]  *Id.* ¶ 26.

[15]  *Id.* ¶ 28.

[16]  *Id.* ¶ 29.

[17]  ECF 64-2, at 10.

[18]  ECF 63-2, ¶¶ 34–35.

### B. Procedural history

Although the procedural history of this litigation is more extensive than detailed here, most of it is not relevant to the Court's consideration of the pending motions—particularly in light of the concessions made by Plaintiff's counsel during oral argument.

Blalock filed his Complaint on March 16, 2018, asserting causes of action for violations of Sections 1983 and 1985 for use of excessive force and conspiracy to interfere with his civil rights.[19] All of the individual Defendants were sued in their individual and official capacities.[20] Summonses were issued the day the Complaint was filed.[21] College Park, Dunn, Reid, and Washington were served between March 21 and 22.[22] All Defendants answered on April 9, 2018, with Jackson and Morris appearing specially to assert a failure of service of process defense.[23]

On June 19, 2019, counsel for Blalock filed a suggestion of death, indicating that Blalock had died on May 10 of that year.[24] Eventually, the administratrix of

---

[19] *See generally* ECF 1.

[20] *Id.* ¶¶ 4–9.

[21] ECFs 2–8.

[22] ECFs 9–12.

[23] ECF 14, at 1, 12 (Fourth and Fifth Defenses).

[24] ECF 49. Blalock's death does not appear to be the result of this incident.

Blalock's estate (Melbahu Blalock), in her capacity as representative of the estate, was substituted as Plaintiff.[25] (For clarity, this Order refers to her as Plaintiff and Melvin Blalock as Blalock.)

On December 30, 2020, Jackson and Morris moved to dismiss, arguing that the Court does not have personal jurisdiction over them because they were never properly served with process.[26] That same day, College Park, Dunn, Reid, Schmitz, and Washington filed their motion for summary judgment.[27] Jackson and Morris joined in this motion to the extent that the Court denies their motions to dismiss.[28] Finally, all Defendants joined in the motion to file certain of Blalock's medical information under seal.[29] Plaintiff responded to the dispositive motions on January 19, 2021.[30] Plaintiff did not respond to the motion to seal. Defendants filed replies on January 28.[31]

---

[25] ECF 60.

[26] ECF 61; ECF 62.

[27] ECF 63.

[28] *Id.* at 1.

[29] ECF 65.

[30] ECF 66 (response to summary judgment); ECF 66-1 (response to Jackson motion); ECF 66-2 (response to Morris motion).

[31] ECF 67 (summary judgment reply); ECF 68 (Morris); ECF 69 (Jackson).

## II. Discussion

### A. Motion to seal

In support of the motion for summary judgment, Defendants seek to file various certified copies of Blalock's medical records under seal.[32] Plaintiff has not opposed the motion. Rule 26 allows a court to enter a protective order rendering documents or portions thereof unavailable to the public after a showing of good cause. Fed. R. Civ. P. 26. Good cause can be established when the materials contain personal identifying information or where public disclosure would result in "annoyance, embarrassment, oppression, or undue burden or expense." *Id.*

The documents Defendants want to seal are certain of Blalock's medical records from March 16, 2016—the date of his encounter with the College Park Police.[33] The documents reflect (among other things) information about Blalock's physical condition, health status, and treatment he received. The Court concludes that these documents are appropriately sealed on the public docket. Notwithstanding the sealing of these documents, to the extent a discussion of the information they contain is relevant to the Court's analysis, such information is not sealed in this Order.

---

[32]   ECF 65.

[33]   ECF 64.

### B.     Motions to dismiss

Jackson's and Morris's motions to dismiss argue that the Court does not have personal jurisdiction over them because they were not properly served with process.[34] Both have appeared in this action specially, without waiving this objection.[35] Jackson was served (via leaving the summons with his wife at their home) on November 17, 2018—eight months after the Complaint was filed.[36] Morris was never served. Yet, home addresses for these Defendants were identified in the Complaint.[37] Jackson and Morris have consistently maintained that they were never properly served.

Rather than dismissing these Defendants or seeking leave to serve them out of time, Plaintiff did nothing. Plaintiff's opposition to the motions to dismiss does not provide any explanation for why Jackson and Morris were not timely served or describe any efforts Plaintiff undertook to effect service.[38] Plaintiff's counsel acknowledged during oral argument that Plaintiff's claims against these two Defendants should be dismissed with prejudice. As a result, the Court has little

---

[34]   *See generally* ECFs 61, 62.

[35]   ECF 14, at 1, 12.

[36]   ECF 29.

[37]   ECF 1, ¶¶ 11, 15.

[38]   ECF 66-1; ECF 66-2.

hesitation in granting Jackson's and Morris's motions and dismissing them from this action with prejudice.

### C. Summary judgment motion

#### 1. Applicable legal standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles. *Anderson*, 477 U.S. at 248. A factual dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. The burden lies with the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If a movant meets its burden, the party opposing summary judgment must present evidence showing either (1) a genuine issue of material fact or (2) that the movant is not entitled to judgment as a matter of law. *Id.* at 324. Here, Plaintiff's counsel essentially admitted there were no material facts in dispute and relies on a sole legal issue to try to defeat summary judgment.

#### 2. Plaintiff abandoned nearly all claims during oral argument.

##### i. Municipal liability and official capacity claims

The Supreme Court has held that municipalities may be held liable for constitutional deprivations under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658,

688 (1978). "To impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Favors v. City of Atlanta*, 849 F. App'x 813, 817 (11th Cir. 2021) (quoting *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)).

"[A] plaintiff seeking to impose liability on a municipality under § 1983 must identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Id.* (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)). In limited instances, a failure to train may amount to such a policy or custom. *Connick v. Thompson*, 563 U.S. 51, 61 (2001). "A city may be held liable under § 1983 for inadequate police training 'where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" *Favors*, 849 F. App'x at 817 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

In opposing summary judgment, Plaintiff pointed to no evidence of a custom or policy that led to a violation of Blalock's rights. During argument, Plaintiff's counsel asserted that College Park had a duty to supervise and train its officers, but conceded that liability cannot attach under a respondeat superior

theory. When asked what the legal basis was for Plaintiff's claim against College Park, counsel responded that he did not have one.

Moreover, Plaintiff's official capacity claims against the individual Defendants were *never* viable. When "an officer is sued under Section 1983 in his or her official capacity, the suit is simply 'another way of pleading an action against an entity of which an officer is an agent.'" *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991), *superseded by statute as recognized in Wilson v. Gillis Advertising Co.*, No. 92-AR-2126-S, 1993 WL 503117 (N.D. Ala. Jan. 8, 1993) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Therefore, such claims against government officials in their official capacity are redundant. *Id. See also Hill v. City of Atlanta,* No. 1:15-CV-01421-AT, 2016 WL 11586947, at *4 (N.D. Ga. Mar. 29, 2016) (dismissing claims against defendant officers in their official capacity where plaintiffs also brought claims against the City of Atlanta). Plaintiff conceded these claims during oral argument.

### ii. Claims against Defendants who had no contact with Blalock

In response to the summary judgment motion, Plaintiff did not point to any evidence suggesting that *any* particular individual defendant used force against

Blalock whatsoever.[39] That is, Plaintiff never put forward any evidence that Plaintiff had even named the correct parties as Defendants. Plaintiff's counsel acknowledged during argument that Plaintiff was abandoning the claims against the "officers who had zero contact" with Blalock, as well as Sergeant Washington (who did not touch Blalock at any point). In short, Plaintiff abandoned all claims against Reid, Schmitz, and Washington.

### 3. Defendant Dunn

The only portion of Plaintiff's Complaint that was left after the concessions by counsel during argument is the Section 1983 claim against Dunn in his individual capacity. The parties do not dispute that Plaintiff contends two White officers—and only those two—were physically involved in the incident with Blalock.[40] It is undisputed that Reid and Washington are Black, and Dunn and Schmitz are White.[41] It is further undisputed that Schmitz did not participate in the restraint, seizure, or detention of Blalock.[42]

---

[39]  *See generally* ECF 66.

[40]  ECF 42-1, at 84:15–25; ECF 63-2, ¶¶ 16, 25.

[41]  ECF 63-2, ¶ 6.

[42]  *Id.* ¶ 25.

This leaves only Dunn, *if* Plaintiff had proof that he was one of the officers who detained Blalock. Plaintiff presented absolutely no evidence of this in response to Defendants' summary judgment motion or during argument. Only because of defense counsel's much appreciated candor in response to the Court's questioning is there any suggestion of record evidence that Dunn participated in Blalock's detention. Defense counsel pointed to Defendants' initial disclosures as evidence that Dunn was one of the officers who detained Blalock and put him in handcuffs.[43] But for that candor, the Court might have granted Defendants' summary judgment motion from the bench rather than taking the matter under advisement.

In response to this sole remaining claim, Dunn asserts that he is entitled to qualified immunity.[44] Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). Plaintiff opposes the grant of qualified immunity based solely on the contention that Dunn

---

[43]   ECF 19, at 4–5.

[44]   ECF 63-1, at 20–23.

was *not* acting within his discretionary authority.[45] Plaintiff's opposition brief argues that the discretionary authority standard applies only when "there is an alleged wrongful act."[46] Defendants retort that "Plaintiff appears to concede that the Defendants did nothing wrong, [so] there is no constitutional violation."[47] It is here that the parties talk past one another: Plaintiff did not concede that there was no violation of Blalock's rights. Rather, as counsel made clear during argument, Plaintiff contends that *Blalock* was not doing anything wrong so Dunn could not have been exercising his discretionary authority in seizing and detaining Blalock. But this would make a defendant's entitlement to qualified immunity entirely a function of whether his actions were justified from the plaintiff's point of view. This circular reasoning has no support in the law.

"An officer acts within the scope of his discretionary authority when his conduct is undertaken pursuant to the performance of his official duties." *Clark v. City of Atlanta*, 544 F. App'x 848, 852 (11th Cir. 2013) (per curiam) (citation omitted). Officers working to complete an arrest and secure the surrounding area are plainly engaged in conduct related to the performance of their official duties. "[A]n officer

---

[45] *See generally* ECF 66.

[46] *Id.* at 4 (citing *Clark v. City of Atlanta*, 544 F. App'x 848 (11th Cir. 2013)).

[47] ECF 67, at 4.

may not only stop, but also conduct a limited detention of someone whom the officer reasonably suspects may pose a threat of criminal activity" for the officer's own or other's safety. *Id.* at 853 (citing *Terry v. Ohio,* 392 U.S. 1, 30 (1968)) (officers investigating suspicious activity at a vacant home in light of recent string of burglaries in the area were within their discretionary authority when they used deadly force against a non-compliant suspect who pulled out a weapon). Plaintiff's counsel conceded during argument that a police officer handcuffing someone and placing them under arrest is "acting as a police officer."

Accordingly, the Court has no trouble concluding that Dunn was acting within his discretionary authority when he seized Blalock. Because Plaintiff abandoned any argument that Dunn violated any of Blalock's clearly established constitutional rights, that is the end of the Court's inquiry. Dunn is entitled to qualified immunity, and therefore summary judgment.

### III.   Conclusion

Defendants' motion to file under seal [ECF 65] is **GRANTED**. The Clerk is directed to file ECF 64 under seal. Defendant C.T. Jackson's motion to dismiss [ECF 61] is **GRANTED**. Defendant C.D. Morris's motion to dismiss [ECF 62] is **GRANTED**. The motion for summary judgment by Defendants City of College Park (College Park), S.M. Dunn, T.T. Reid, A.M. Schmitz, and C.T. Washington

[ECF 63] is **GRANTED**. This action is **DISMISSED WITH PREJUDICE**. The Clerk is **DIRECTED** to enter judgment in favor of Defendants and close this case.

**SO ORDERED** this the 1st day of September, 2021.

Steven D. Grimberg
United States District Court Judge